Filed 6/26/13  P. v. Petty CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C071607 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF12-123) |
| v. | |
| LENARD EARL PETTY, JR., | |
| Defendant and Appellant. | |

Following a court trial, defendant, Lenard Earl Petty, Jr., was convicted of substantial sexual conduct with a child under the age of 14 years old (Pen. Code, § 288.5, subd. (a)).[1]  The trial court also found true the allegation defendant used force or fear in the commission of the offense (§1203.066, subd. (a)(1)) and sentenced defendant to 12 years in state prison.

---

[1]  Undesignated statutory references are to the Penal Code.

1

Defendant appealed. His appeal is subject to the principles of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *People v. Kelly* (2006) 40 Cal.4th 106, 110. In accordance with the latter, we will provide a summary of the offenses and the proceedings in the trial court.

BACKGROUND

A.M. was close to defendant's wife. She visited defendant and his wife a few times a week and frequently spent the night at their home. A.M. described a number of incidents of molestation occurring in defendant's trailer, beginning when she was 11 or 12 years old. A.M. described one incident when defendant rubbed her bottom over her clothing and another when he put his hand down her shirt. Both times he told her not to tell anyone. She described another incident when defendant and his family were in the process of moving into a new home. A.M. was spending the night at defendant's trailer. He went to wake her up, and instead got into bed with her. He tried to pull her toward him while rubbing her breasts. Again, he threatened to hurt her if she told anyone.

Also when the family was moving, A.M. was helping the family move things in and out of a storage unit. She was sweeping the unit and defendant wrapped his arms around her to "help" her. She refused his help, but he grabbed her and pulled her toward him. He grabbed her breasts and bottom and rubbed her genitals. As she was leaving the storage unit, he reminded her of his prior threats. Defendant's wife denied A.M. was ever alone with defendant in the storage locker.

Defendant also molested A.M. at his new home. He was in the kitchen drinking and moving boxes when A.M. was walking to the garage. He offered her alcohol. She declined and walked away. He grabbed her arm and pulled her towards him, grabbed her breasts and told her to lie down with him. He rubbed her posterior and when she tried to walk away he told her she was not going anywhere. She again refused and he threatened to kill her if she told anyone.

2

During another visit to defendant's home, A.M. was using the bathroom in the master bedroom. When A.M. attempted to leave the master bedroom, defendant stopped her and told her to come lie down with him. He tried to stop her from leaving by grabbing her shoulders, breasts and posterior. He again threatened to kill her if she told anyone.

A.M. testified in general that defendant bullied and threatened her. He touched her in a sexual way "[e]very time" she was at his trailer. He would touch her breasts over her clothing, tried to rub her genitals and tried to pull off her clothes.

A.M. told her cousin, V.P., about the molestations. V.P. also alleged defendant had molested her.[2] A.M. told a number of other family members about the molestation and, eventually, one of them called the police.

A.M. was interviewed by Deputy Paul Nacin. A.M. appeared scared. She reported defendant had given her alcohol and tried to grab her breasts and genitals. Defendant denied molesting A.M.

After an Evidence Code section 402 hearing, Evidence Code section 1108 evidence was admitted through a childhood acquaintance of defendant, D.S. D.S. testified defendant had sodomized him and made him orally copulate defendant approximately five times. D.S. was afraid of defendant because he was older, bigger, taller and heavier than D.S. D.S. reported the molestations.

Defendant was charged with substantial sexual conduct with A.M., a child under the age of 14 years (§ 288.5, subd. (a)). It was further alleged defendant used force against her. (§§ 1203.066, subd. (a)(1)).

The trial court found defendant guilty of molesting A.M. and found true the allegation he had used force against her. The trial court sentenced defendant to the

---

[2] Defendant was also charged with molesting V.P. Because he was acquitted on all of those counts, they and the facts underlying them are not recounted.

3

midterm of 12 years in state prison and ordered 277 days of presentence credits. Various fines and fees were imposed.

DISCUSSION

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief setting forth the facts of the case and, pursuant to *Wende, supra*, 25 Cal.3d 436, requesting the court to review the record and determine whether there are any arguable issues on appeal. Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. Defendant has filed a supplemental brief making numerous claims of ineffective assistance of counsel. Defendant also contends the trial court improperly denied his *Marsden*[3] motion in case No. CRF11-591.

As to the *Marsden* motion in case No. CRF11-591, that matter is not before us on appeal. Defendant was initially charged in case No. CRF11-591 and that complaint contained a one-strike allegation. The parties agreed the information in case No. CRF11-591 would be dismissed and a new complaint would be filed, case No. CRF12-123, which did not include the one-strike allegation. In exchange, defendant agreed to a court trial. Defendant contends he requested substitute counsel because of an alleged conflict of interest with the public defender's office, specifically the office's prior representation of prosecution witnesses.[4] He also contends after denying his *Marsden* motion, the trial court advised him his only option was to sign a *Faretta*[5] waiver and continue without counsel or accept the public defender's office. The case before us on appeal is case No.

---

**3**     *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

**4**     Defendant also raises this substantive claim of conflict in his argument that he received ineffective assistance of counsel. We address the substance of the claim in that portion of the decision.

**5**     *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562].

CRF12-123. Defendant did not include case No. CRF11-591 in his notice of appeal. That case was dismissed and the record of that case is not before us.**6** The events defendant complains of did not occur in the case before us on appeal. Defendant did not make a *Marsden* motion in case No. CRF12-123. Our authority to grant relief is limited to the case before us on appeal.

In order to establish ineffective assistance of counsel, defendant must show counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that prejudice resulted from counsel's performance or lack thereof. (*People v. Lucas* (1995) 12 Cal.4th 415, 436; *People v. Wharton* (1991) 53 Cal.3d 522, 575.) Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*In re Harris* (1993) 5 Cal.4th 813, 833; *People v. Ledesma* (1987) 43 Cal.3d 171, 218.)

Defendant contends he had an irreconcilable conflict with counsel in that the public defender's office had previously represented V.P.'s mother, A.M.'s stepfather and D.S. Given the nature of the allegations, it appears they are necessarily based upon conduct outside the record on appeal. We cannot consider matters outside the record on appeal. (*People v. Szeto* (1981) 29 Cal.3d 20, 35.) Furthermore, an attorney's prior representation of a witness in an unrelated matter ordinarily creates no conflict of interest for counsel unless the witness imparted confidential information material to the defendant's defense. (*People v. Clark* (2011) 52 Cal.4th 856, 983-984.) Reversal is required " 'only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." ' [Citation.] . . . [A] defendant is required to show . . . a reasonable probability exists that, but for counsel's deficiencies, the result of the

---

**6** We denied defendant's request to augment the record to include the reporter's transcript of the *Marsden* motion in case No. CRF11-591.

proceeding would have been different. [Citation.] [¶] . . . [D]etermining whether [defense counsel's] performance was adversely affected requires us to ask whether he 'pulled his punches,' i.e., whether [counsel] failed to represent defendant as vigorously as he might have, had there been no conflict. [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 309-310.) Defendant does not claim counsel personally represented the witnesses, but rather the public defender's office did. In the absence of a direct and personal relationship with the witnesses, we cannot presume counsel acquired confidential information material to the defense. (See *Rhaburn v. Superior Court* (2006) 140 Cal.App.4th 1566, 1581.) There is no indication in the record, and no claim by defendant, that defense counsel was in possession of such confidential information. Nor is there any indication in the record that defense counsel "pulled his punches" in representing defendant. To the contrary, counsel thoroughly cross-examined witnesses, presented an expert witness to challenge the prosecution's expert witness, and challenged the credibility of the complaining witnesses. Defendant was ultimately acquitted on three of the four charges he was facing. On this record, defendant has not shown any prejudice.

Defendant also claims an irreconcilable conflict was created after counsel advised defendant's girlfriend that defendant should take a plea deal and defendant threatened to assault counsel. Defendant argues this threat demonstrates an irreconcilable conflict existed between himself and counsel because it was used in the People's arguments to deny defendant release on his own recognizance. The record does reflect that defendant made a threat against trial counsel, although not the specific nature of the threat. In the context of a claim of ineffective assistance of counsel, an "irreconcilable conflict" is one which demonstrates a complete breakdown of the attorney-client relationship. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1108.) The record does not reflect that the attorney-client relationship had deteriorated to the point that defendant's right to effective assistance of counsel was jeopardized. Counsel expressly stated he was not concerned

6

about the threat.  It appears from the record defendant and counsel "continued to communicate productively with each other and each appeared to be putting his best efforts into trying the case." (*People v. Barnett, supra,* 17 Cal.4th at p. 1108.)  The record reflects the threat to counsel was considered by the trial court in deciding to have defendant shackled during trial.  We see no prejudice to defendant in this decision.  As the court noted, "I'm not going to take his restraint in any way and hold it against him in the sense of his case as a jury might do."  The record also reflects the court denied defendant release on his own recognizance after trial but before sentencing.  The court denied defendant's release based on a concern for public safety founded primarily on the testimony of threats made against A.M. and V.P.  Again, we can discern no prejudice to defendant from the denial of release on his own recognizance.

Defendant claims counsel was ineffective in that he provided inadequate pretrial interviews and investigation.  There is no information in the record to support this claim.  As above, we cannot consider matters outside the record on appeal.  (*People v. Szeto, supra,* 29 Cal.3d at p. 35.)

Defendant contends counsel was ineffective in closing argument, because counsel "made the statement that the court could find [defendant] guilty of a lesser offense involving [A.M.]" despite the fact that defendant did not admit to any sexual conduct with either V.P. or A.M.  Defendant claims this argument was an inappropriate concession of guilt, made without his consent.  Defendant has misconstrued counsel's closing argument.  Counsel argued A.M. was not a credible witness and that her accusations were motivated by a desire to injure defendant.  He went on to argue that "[*i*]*f* you believe what she has to say -- and I'm not saying that you should" (emphasis added), the conduct described did not rise to the level of a felony lewd and lascivious conduct charge; rather, the conduct described nothing more than a misdemeanor offense.  This is not a concession of guilt, but a proper conditional argument made in an effort to either

7

eliminate or reduce defendant's potential criminal culpability. (*People v. Williams* (1997) 16 Cal.4th 153, 264-265.)

Defendant contends trial counsel should have moved for a mistrial after the court decided to admit the testimony of D.S. and because defendant "instructed [counsel] to seek [a] new trial based on counsel's performance at trial." The court held an Evidence Code section 402 hearing and found D.S.'s proffered Evidence Code section 1108 testimony admissible. Prior to sentencing, defense counsel indicated defendant wanted him to investigate filing a motion for new trial. The record does not reflect the grounds on which defendant wanted a new trial and counsel did not state the basis for defendant's request. Defendant claims counsel should have sought a mistrial based on the admission of the D.S.'s testimony because it was prejudicial and the court said it had influenced its decision. The record belies this claim. In announcing its verdict, the trial court expressly noted it had considered the Evidence Code section 1108 evidence and while there were sufficient similarities to admit the evidence, there were such significant differences between that offense and the current offense that it was given minimal weight. At sentencing, the trial court noted that the prior offense was considered, but because of defendant's youth at the time of the offense and the differences in the facts, it was not an aggravating factor. Counsel indicated he had not filed the motion because he did not believe there were grounds for a mistrial. Counsel does not render ineffective assistance by failing to make futile or groundless motions. (*People v. Price* (1991) 1 Cal.4th 324, 387.) As a reviewing court, we will not second guess counsel's reasonable tactical decisions. (*People v. Riel* (2000) 22 Cal.4th 1153, 1185.)

Defendant also claims the trial court was required to hold a *Marsden* hearing when counsel indicated defendant wanted him to file a motion for new trial. Defendant is incorrect. Neither defendant nor counsel "clearly indicated" to the trial court that defendant wanted counsel relieved and substitute counsel appointed. Absent such a clear

8

indication, the trial court had no obligation to hold a *Marsden* hearing. (*People v. Sanchez* (2011) 53 Cal.4th 80, 90, fn. 3.)

Lastly, defendant appears to contend he received ineffective assistance of appellate counsel by virtue of counsel filing a *Wende* brief on appeal. An indigent defendant has the right to effective assistance of counsel on appeal. (*In re Spears* (1984) 157 Cal.App.3d 1203, 1210.) Appellate counsel has the duty to prepare a brief containing citations to the appellate record and appropriate authority, setting forth all arguable issues. That is, those issues which have a reasonable argument supporting prejudicial error justifying reversal or modification of the judgment. (*Ibid.*; *People v. Feggans* (1967) 67 Cal.2d 444, 447.) Failure of "appellate counsel to raise crucial assignments of error, which arguably might have resulted in a reversal" deprives an appellant of effective assistance of appellate counsel. (*In re Smith* (1970) 3 Cal.3d 192, 202-203.) However, the fact that appellate counsel followed the procedure set forth in *Wende* is insufficient, by itself, to show appellate counsel has been ineffective. Accordingly, defendant has failed to meet his burden of proof on the issue of ineffective assistance of appellate counsel. This is particularly so where, as here, we have undertaken an examination of the entire record pursuant to *Wende*, and we find no arguable error that would result in a disposition more favorable to defendant.

Defendant's first name is listed incorrectly as "Leonard" on the abstract of judgment. We direct the superior court to correct the abstract of judgment by indicating defendant's first name is "Lenard."

## DISPOSITION

The trial court is directed to correct the abstract of judgment to show defendant's first name as "Lenard" instead of "Leonard" and to forward the corrected abstract of

9

judgment to the Department of Corrections and Rehabilitation.  The judgment is affirmed.

                                    _____NICHOLSON____, Acting P. J.


We concur:


_____BUTZ_____, J.


_____MAURO_____, J.